UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUMMONS ISSUED

---

FRED TEI,

                 Plaintiff,

     -v-

THE CITY OF NEW YORK; New York City Police
Department ("NYPD") Police Officer ("P.O.")
KENNETH FISCHER (Shield No. 008464); P.O.
JEREMY MCGEE (Shield No. 18706); and P.O.
NELSON PENA (Shield No. 817); P.O. JOHN DOE
(the name John Doe being fictitious, as his true name
and shield number is not presently known); In their
individual capacities;

                 Defendants.

**COMPLAINT AND DEMAND
FOR JURY TRIAL**

**CV 13-5609**

Index No. 13-CV-

**ECF CASE**

**ROSS, J.**

---

Plaintiff FRED TEI, through his attorney JANE L. MOISAN of Rankin & Taylor, PLLC, as and for his complaint, does hereby state and allege:

## PRELIMINARY STATEMENT

1. This is a civil rights action brought to vindicate plaintiff's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983 and pendant claims under the laws and constitution of the State of New York.

2. Plaintiff FRED TEI's rights were violated when officers of the New York City Police Department arrested, detained and caused him to be criminal prosecuted for possessing his own car.

3. Plaintiff FRED TEI's rights were further violated when the same car was subsequently taken into possession by the New York City Police Department for nearly two and a half years, during which time the car was destroyed and plaintiff denied any compensation.

4. Accordingly, plaintiff seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a) (3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

6. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) in that plaintiff's claim arose in the Southern District of New York.

7. Plaintiff FRED TEI satisfied all administrative requirements to suit under New York General Municipal Law insofar as he filed a Notice of Claim on March 5, 2013 and his claim was not adjusted within the statutory timeframe. Thus, this Court has supplemental jurisdiction over plaintiff's claims against defendants under the Constitution and laws of the State of New York because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

8. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

9. Plaintiff FRED TEI ("TEI") was at all times relevant to this action a resident of Bronx County in the State of New York.

10. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a

police force and the employment of police officers as said risks attach to the public consumers of the services provided by the New York City Police Department.

11. Defendants New York City Police Department ("NYPD") Police Officer ("P.O.") KENNETH FISCHER (Shield No. 008464) ("FISCHER"), P.O. JEREMY MCGEE (Shield No. 18706) ("MCGEE"), and P.O. NELSON PENA (Shield No. 817) ("PENA"), and P.O. JOHN DOE ("DOE") (referred to collectively as the "individual defendants") are and were at all times relevant herein, officers, employees, and agents of the NYPD.

12. The individual defendants are being sued herein in their individual capacities.

13. The true name and shield number of defendant DOE is not currently known to the plaintiff.[1] However, defendant DOE is an employee or agent of the NYPD. Accordingly, he is entitled to representation in this action by the New York City Law Department ("Law Department") upon their request, pursuant to New York State General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that plaintiff intends to name said officer as a defendant in an amended pleading once his true name and shield number of said defendant becomes known to plaintiff; and (b) that the Law Department should immediately begin preparing his defense in this action.

14. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers,

---

[1] By identifying said defendant as "John Doe," plaintiff is making no representations as to the gender of said defendant.

agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

## **STATEMENT OF FACTS**

15. On March 31, 2011 at approximately 7:30 p.m., the defendants FISHCER and MCGEE arrested plaintiff TEI at his place of work without justification or probable cause and charged him with unlawful possession of a vehicle they had personal knowledge he rightfully owned.

16. Plaintiff TEI, employed for approximately nine years as a nursing attendant at Einstein Montefiore Hospital in the County of the Bronx State of New York, was on shift when defendants FISCHER and MCGEE placed him under arrest and removed him from the building within the view and in front of the hospital staff and management, including plaintiff TEI's supervisor.

17. Prior to this arrest, plaintiff TEI had received a phone call from his daughter and she told him, in sum and substance, that defendants FISCHER and MCGEE had stated to her they had seen plaintiff TEI's vehicle parked outside his residence at 2705 Morris Avenue and wanted to take possession of his vehicle.

18. Plaintiff TEI then instructed his daughter to give defendants FISCHER and MCGEE the keys to the vehicle.

19. Upon information and belief, defendants FISCHER and MCGEE then took possession of the vehicle and went to plaintiff TEI's place of work to execute his arrest.

20. Upon information and belief, defendants FISCHER and MCGEE had personal knowledge that plaintiff TEI was the rightful owner of the vehicle and that upon their request he had authorized them to take possession of the vehicle, yet issued arrest charges against plaintiff TEI of Grand Larceny under New York State Penal Code ("P.L.") § 155.30(08), Criminal

4

Possession Stolen Property under P.L. § 165.45(03), and unauthorized Use of Vehicle under P.L. § 165.05(03).

21. Defendants FISCHER swore out a criminal complaint against plaintiff TEI, and defendants FISCHER, MCGEE and PENA caused plaintiff TEI to be falsely charged with Criminal Possession of Stolen Property under New York Penal Law § 165.40.

22. Plaintiff TEI was arraigned on April 1, 2011 and released at approximately 11:00 a.m., after having been detained for approximately sixteen hours.

23. Plaintiff TEI was forced to appear again on August 23, 2011, at which time the prosecution dismissed the case and it was sealed.

24. Defendant CITY maintained possession of the vehicle for over two and a half years, providing plaintiff TEI with contradictory information regarding the vehicle during such time.

25. On July 8, 2013, defendant DOE reported to plaintiff TEI that the vehicle had been destroyed.

26. Defendant CITY has failed to provide plaintiff TEI with any compensation for the vehicle.

27. As a result of the conduct described supra, plaintiff TEI's constitutional rights were violated and he suffered mental and reputational harms.

### FIRST CLAIM
### DEPRIVATION OF RIGHTS
### UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. § 1983
### (*Against all Defendants*)

28. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

29. Defendants, under color of state law, subjected the plaintiff to the foregoing acts and omissions, thereby depriving plaintiff of his rights, privileges and immunities secured by the

5

Fourth and Fourteenth Amendments to the United States Constitution, including, without limitation, deprivation of the following constitutional rights: (a) freedom from unreasonable seizure of his person and effects, including the excessive use of force; and (b) freedom from deprivation of liberty or property without due process of law.

30. Defendants' deprivation of plaintiff's constitutional rights resulted in the injuries and damages set forth above.

## SECOND CLAIM
## *MONELL* CLAIM AGAINST DEFENDANT CITY – 42 U.S.C. § 1983
### (*Against Defendant City of New York*)

31. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32. All of the acts and omissions by the named and unnamed individual police officer defendants described above were carried out pursuant to overlapping policies and practices of the defendant CITY which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the defendant CITY and its agency, the NYPD.

33. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the individual police defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

34. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City of New York and the NYPD, all under the supervision of ranking officers of the NYPD.

6

35. The aforementioned customs, practices, procedures and rules of the City of New York and the NYPD include, but are not limited to, the following unconstitutional practices:

    a. Failing to supervise, train, instruct and discipline police officers and encouraging their misconduct;

    b. Discouraging police officers from reporting the corrupt or unlawful acts of other police officers; and

    c. Retaliating against officers who report police misconduct.

36. The existence of the aforesaid unconstitutional customs and practices are further evidenced, inter alia, by the following:

    a. Long v. City of New York, 09-CV-9216 (AKH) (S.D.N.Y.); People v. Pogan, 06416-2008 (Sup. Ct., N.Y. Co.) (officer who purposefully swore out a false complaint and used excessive force is convicted of falsifying police records and was prosecuted for recklessly using physical force);

    b. Colon v. City of New York, 09-CV-0008 (E.D.N.Y.). In an Order dated November 25, 2009, which denied the CITY's motion to dismiss on Iqbal/Twombly grounds, wherein the police officers at issue were fired and prosecuted for falsifying evidence in a purported buy-and-bust operation, the Honorable District Court Judge Weinstein wrote:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officer of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration – through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department – there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.

    c. Carmody v. City of New York, 05-CV-8084 (HB), 2006 U.S. Dist. LEXIS 83207 (S.D.N.Y.) (police officer alleges that he was terminated for cooperating with another officer's claims of a hostile work environment);

    d.   Powers v. City of New York, 04-CV-2246 (NGG), 2007 U.S. Dist. LEXIS 27704 (E.D.N.Y.) (police officer alleges unlawful retaliation by other police officers after testifying about corruption within the NYPD);

    e.   Nonnemann v. City of New York, 02-CV-10131 (JSR) (AJP), 2004 U.S. Dist. LEXIS 8966 (S.D.N.Y.) (former NYPD lieutenant alleging retaliatory demotion and early retirement after reporting a fellow officer to IAB and CCRB for the officer's suspicion less, racially-motivated stop-and-frisk of a group of Hispanic youth);

    f.   Barry v. New York City Police Department, 01-CV-10627 *2 (CBM), 2004 U.S. LEXIS 5951 (S.D.N.Y.) (triable issue of fact where NYPD sergeant alleged retaliatory demotion and disciplinary charges in response to sergeant's allegations of corruption within her unit and alleged that the NYPD had an "unwritten but pervasive custom of punishing officers who speak out about police misconduct and encouraging, if not facilitating, silence among officers");

    g.   Walton v. Safir, 99-CV-4430 (AKH), 122 F.Supp.2d 466 (S.D.N.Y. 2000) (factual findings after trial that a 12-year veteran of NYPD was terminated in retaliation for criticizing the racially-motivated policies of the NYPD's Street Crime Unit and for alleging that such policies led to the NYPD shooting death of Amadou Diallo);

    h.   White-Ruiz v. City of New York, 93-CV-7233 (DLC) (MHD), 983 F.Supp. 365, 380 (S.D.N.Y. 1997) (holding that the NYPD had an "unwritten policy or practice of encouraging or at least tolerating a pattern of harassment directed at officers who exposed instances of police corruption"); and,

    i.   Ariza v. City of New York, 93-CV-5287 (CPS), 1996 U.S. Dist. LEXIS 20250 at*14 (E.D.N.Y.) (police officer alleges retaliatory duty assignments and harassment in response to his allegations about a racially-discriminatory workplace; on motion for summary judgment, the Court held that the police officer had established proof of both a widespread usage of a policy to retaliate against police officers who expose police misconduct and a failure to train in the police department).

37. Furthermore, the existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the failure to supervise, train, instruct and discipline police officers and encouraging their misconduct**, are further evidenced, inter alia, by the following:

    a.   The Report of the Commission to Investigate Allegations of Police Corruption and the Anti-Corruption Procedures of the Police Department ("Mollen Commission Report"), dated July 7, 1994, states:

> In the face of this problem [of corruption], the [NYPD] allowed its systems for fighting corruption virtually to collapse. It has become

more concerned about the bad publicity that corruption disclosures generate that the devastating consequences of corruption itself. As a result, its corruption control minimized, ignored and at times concealed corruption rather than root it out. Such an institutional reluctance to uncover corruption is not surprising. No institution wants its reputations tainted – especially a Department that needs the public's confidence and partnership to be effective. A weak and poorly resources anti-corruption apparatus minimizes the likelihood of such taint, embarrassment and potential harm to careers. Thus there is a strong institutional incentive to allow corruption efforts to fray and lose priority – which is exactly what the Commission uncovered. This reluctance manifested itself in every component of the Department's corruption controls from command accountability and supervision, to investigations, police culture, training and recruitment. For at least the past decade, the system designed to protect the Department from corruption minimized the likelihood of uncovering it.[2]

b. Accordingly, in 1990, the Office of the Special Prosecutor, which investigated charges of police corruption, was abolished.

c. In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noted a "widespread… custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, Commissioner Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."[3]

d. Regarding defendant CITY's tacit condoning and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly independent of the NYPD, that is responsible for investigating and issuing findings on complaints of police abuse and misconduct.[4] When it does, however, Police Commissioner Kelly controls whether the NYPD pursues the matter and he alone has the authority to impose discipline on the subject officer(s). Since 2005, during Kelly's tenure, only one-quarter of officers

---

[2]      Mollen Commission Report, pp. 2-3, *available at* http://www.parc.info/client_files/Special%20Reports/ 4%20-%20Mollen%20Commission%20-%20NYPD.pdf.

[3]      Oren Yaniv and John Marzulli, *Kelly Shrugs Off Judge Who Slammed Cops*, New York Daily News, December 2, 2009, *available at* http://www.nydailynews.com/news/ny_crime/2009/12/02/2009-12-02_kelly_shrugs_off_judge_who_rips_lying_cops.html.

[4]      In 2006, out of more than 10,000 allegations that were fully investigated, the CCRB substantiated only 594 (about 6%). In 2007, out of more than 11,000 allegations that were fully investigated, the CCRB substantiated only 507 (about 5%). *See*, CCRB Jan.-Dec. 2007 Status Report at p. 19, *available at* http://www.nyc.gov/html/ccrb/pdf/ccrbann2007_A.pdf. Upon information and belief, the low rate of substantiated complaints is due in part to the above-noted de facto policy and/or well-settled and widespread custom and practice in the NYPD whereby officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony and statements given to the CCRB, to cover-up civil rights violations perpetrated by themselves or fellow officers, supervisors and/or subordinates.

whom the CCRB found engaged in misconduct received punishment more severe than verbal "instructions." Moreover, the number of CCRB-substantiated cases that the NYPD has simply dropped (i.e., closed without action or discipline) has spiked from less than 4% each year between 2002 and 2006, to 35% in 2007, and approximately 30% in 2008. Alarmingly, the NYPD has refused to prosecute 40% of the cases sent to it by the CCRB in 2009.[5] As a result, the percentage of cases where the CCRB found misconduct but where the subject officers were given only verbal instructions or the matter was simply dropped by the NYPD rose to 66% in 2007. Substantiated complaints of excessive force against civilians accounted for more than 10% of the cases that the NYPD dropped in 2007 and account for more than 25% of cases dropped in 2008.[6]

38. The existence of the aforesaid unconstitutional customs and practices, **specifically with regard to the practice or custom of discouraging police officers from reporting the corrupt or unlawful practices of other police officers and of retaliating against officers who report misconduct**, are further evidenced, inter alia, by the following:

    a. Former New York County District Attorney Robert Morgenthau has been quoted as acknowledging that, in the NYPD, there is a "code of silence," or a "code of protection" that exists among officers and that is followed carefully;

    b. In 1985, former NYPD Commissioner Benjamin Ward, testifying before a State Senate Committee, acknowledged the existence of the "code of silence" in the NYPD;

    c. Former NYPD Commissioner Robert Daly wrote in 1991 that the "blue wall of solidarity with its macho mores and prejudices, its cover-ups and silence, is reinforced every day in every way."

39. The existence of the above-described unlawful de facto policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officer and officials of the NYPD and defendant CITY, including, without limitation, Commissioner Kelly.

---

[5]    Christine Hauser, *Few Results for Reports of Police Misconduct*, New York Times, October 5, 2009, at A19.

[6]    Daily News, *Editorial: City Leaders Must Get Serious About Policing the Police*, August 20, 2008.

40. The actions of defendants FISCHER, MCGEE and PENA resulted from and were taken pursuant to the above-mentioned de facto policies and/or well-settled and widespread customs and practices of the City, which are implemented by members of the NYPD, of engaging in systematic and ubiquitous perjury, both oral and written, to cover-up federal law violations committed against civilians by either themselves of their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Commissioner Kelly who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testifying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves of fellow offices, supervisors and/or subordinates against those civilians.

41. All of the foregoing acts by defendants deprived the plaintiff of federally protected rights.

42. Defendant CITY knew or should have known that the acts alleged herein would deprive the plaintiff of his rights, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

43. Defendant CITY is directly liable and responsible for the acts of defendants FISCHER, MCGEE and PENA because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the

rules and regulation of the CITY and NYPD, and to require compliance with the Constitution and laws of the United States.

44. Despite knowledge of such unlawful <u>de facto</u> policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the CITY, including Commissioner Kelly, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

45. The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned CITY policies, practices and/or customs, the defendants FISCHER, MCGEE and PENA felt empowered to arrest plaintiff TEI without probable cause or justification and to falsely charge him with crimes.

46. Plaintiff's injuries were a direct and proximate result of the defendant CITY and the NYPD's wrongful <u>de facto</u> policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant CITY and the NYPD to properly supervise, train and discipline their police officers.

47. The actions of the individual police defendants resulted from and were taken pursuant to the following <u>de facto</u> policies and/or well-settled and widespread customs and practices of the

CITY, which implemented by agents or employees of the NYPD, empowered of defendants FISCHER, MCGEE and PENA to arrest plaintiff TEI without probable cause or justification and to falsely charge him with crimes.

48. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct and were directly responsible for the violation of the plaintiff's constitutional rights.

**THIRD CLAIM**
**NEGLIGENCE**
**<u>UNDER THE LAWS OF THE STATE OF NEW YORK</u>**
*(Against All Defendants)*

49. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

50. Defendants FISCHER and MCGEE, individually and collectively, owed plaintiff a duty to ensure they had a legal basis to deprive him of his liberty, and were aware of facts that should have led them to believe they lacked a legal basis to detain him.

51. Defendant PENA owed plaintiff a duty to report information regarding him in good faith and accurately.

52. Defendant DOE owed plaintiff a duty to ensure the return of his property unharmed or to make plaintiff whole in light of the destroyed property.

53. Defendant DOE was aware of sufficient facts that should have led him to believe plaintiff was owed compensation for his property.

54. The individual defendants breached their duty to plaintiff and thereby negligently caused, jointly and severally, injuries, emotional distress and damage to plaintiff, as set forth above.

55. The acts and conduct of the defendants were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

56. The conduct of the individual defendants alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of respondeat superior.

57. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured as set forth above.

### FOURTH CLAIM
### FALSE ARREST AND FALSE IMPRISONMENT
### UNDER THE LAWS OF THE STATE OF NEW YORK
*(Against Defendants Fischer, McGee and the City of New York)*

58. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

59. By the actions described above, defendants FISCHER and MCGEE caused to be falsely arrested or falsely arrested plaintiff, without justification or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of the defendants FISCHER and MCGEE were the direct and proximate cause of injury and damage to plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

60. The conduct of the defendants FISCHER and MCGEE alleged herein occurred while they were on duty and in uniform, and/or in and during the course and scope of their duties and

functions as NYPD officers, and/or while they were acting as agents and employees of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of <u>respondeat superior</u>.

61. As a result of the foregoing, plaintiff was deprived of his liberty, suffered specific and serious bodily injury, pain and suffering, psychological and emotional injury, costs and expenses, and was otherwise damaged and injured.

**FIFTH CLAIM**
**CONVERSION**
<u>**UNDER THE LAWS OF THE STATE OF NEW YORK**</u>
*(Against Defendants John Doe and City of New York)*

62. Plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

63. By confiscating plaintiff's property, and by intentionally and maliciously refusing to return such property to the plaintiff despite his unambiguous claim of right, and failure to compensate plaintiff for the property taken, defendant DOE and CITY have interfered, and are continuing to interfere, with plaintiff's property rights.

64. The acts and conduct of defendant JOHN DOE were the direct and proximate cause of injury and damage to the plaintiff and violated his statutory and common law rights as guaranteed by the constitution and laws of New York.

65. The conduct of the defendant JOHN DOE alleged herein occurred while he was on duty and in uniform, and/or in and during the course and scope of his duties and functions as NYPD officers, and/or while he was acting as agent and employee of defendant CITY, clothed with and/or invoking state power and/or authority, and, as a result, defendant CITY is liable to plaintiff pursuant to the state common law doctrine of <u>respondeat superior</u>.

15

66. Defendants JOHN DOE and CITY, therefore, are liable for conversion for all properties confiscated from the plaintiff which have not been returned to him in an unharmed condition.

67. As a result of the foregoing, plaintiff has been deprived of the use and enjoyment of his property without legal justification, resulting in costs, expenses, emotional anguish and other damages and injuries.

## JURY DEMAND

68. Plaintiff demands a trial by jury in this action on each and every one of her damage claims.

WHEREFORE, plaintiff demands judgment against the defendants individually and jointly and prays for relief as follows:

a.   That he be compensated for violation of constitutional rights, pain, suffering, mental anguish, and humiliation; and

b.   That he be awarded punitive damages against the individual defendants; and

c.   That she be compensated for attorneys' fees and the costs and disbursements of this action; and

d.   For such other further and different relief as to the Court may seem just and proper.

Dated:     New York, New York
           October 7, 2013

Respectfully submitted,

By:     _____
        Jane L. Moisan (3744)
        Rankin & Taylor, PLLC
        *Attorneys for the Plaintiff*
        11 Park Place, Ste. 914
        New York, New York 10007
        t: 212-226-4507

16